FILED
2005 Nov-18  PM 04:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **TERESA HUMPHRIES,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **CV-04-BE-3069-S** |
| | ] | |
| **UNITED PARCEL SERVICE, et. al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |
| | ] | |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

This case is currently before the court on a motion for summary judgment (doc. # 12), supporting brief (doc. # 13), and supporting evidentiary material (doc. # 14) filed by defendants United Parcel Service Company, Inc., The United Parcel Service Retirement Plan, and Broadspire Services, Inc (f/k/a Kemper National Service, Inc.).  Plaintiff Teresa Humphries filed an objection to the motion for summary judgment (doc. # 18) and subsequently filed evidentiary submissions in opposition to the motion for summary judgment (doc. # 19).

Plaintiff brings this lawsuit against the defendants under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1132(a)(1)(B)[1]("ERISA"), seeking the

---

[1]29 U.S.C. § 1132(a)(1)(B), which allows claimants to bring a civil action to recover benefits under an ERISA plan, provides:

> (a) Persons empowered to bring a civil action.  A civil action may be brought-
> > (1) by a participant or beneficiary-
> > . . .
> > (B) to recover benefits due to him under the terms of his plan, to enforce his rights under

1

reinstatement of disability benefits pursuant to an employee welfare benefit plan[2] provided by UPS. Specifically, Humphries contends that UPS' determination that she is no longer eligible for long-term disability benefits is erroneous because fibromyalgia and clinical depression prevent her from engaging in the material and substantial duties of her regular occupation. The court has federal question jurisdiction of the plaintiff's ERISA claim under 29 U.S.C. §1132(e)(1).

The court has carefully reviewed the motion for summary judgment, the briefs filed in support of and in opposition to the motion, and the supporting and opposing evidentiary materials. Based on its review, the court concludes that defendants' motion for summary judgment is due to be GRANTED in part and DENIED in part.

## II. FACTS

This case arises from UPS' cancellation of the plaintiff's long-term disability benefits. On March 21, 2003, Humphries was notified that her disability benefits would be discontinued effective March 31, 2003 based on a determination that the medical evidence in her file contained insufficient evidence to establish an inability to perform the material and substantial

---

the terms of the plan or to clarify his rights to future benefits under the terms of the plan; . . ..

[2]The Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461, defines an "employee welfare benefit plan" as:

any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions). 29 U.S.C. § 1002(1).

2

duties of her regular occupation.[3]

UPS' long-term disability Plan is funded through a non-reversionary trust, and consequently, disability benefits are not paid from UPS general assets.  UPS is the Plan Administrator and has the exclusive right and discretion to interpret the terms and conditions of the Plan and to decide all matters arising in its administration and operation, including questions of fact and issues pertaining to eligibility for, and the amount of, benefits paid by the Plan.

However, UPS delegates the exclusive authority referenced above to the UPS Claims Review Committee.  The Committee makes the final decision regarding disability benefits under the Plan.  Kemper provides administrative services in connection with the long-term disability benefits and makes the initial determination regarding participant eligibility.

For the first 24 months of disability under the Plan, an employee is considered disabled if Kemper determines that the employee is "unable to perform the material and substantial duties of [the employee's] regular occupation due to an illness or accidental injury."  However, disability benefits may be terminated if the employee "ceases to have a disability as defined by the Plan and as determined by the Plan Administrator."

Employees whose disability claims are denied must initially appeal to Kemper.  If Kemper denies the claim, then the employee can appeal Kemper's decision to the UPS Claims Review Committee for a final decision regarding eligibility.

Humphries was a twenty-two year employee[4] of UPS, working as a keypunch operator. As a keypunch operator, plaintiff was required to work in a seated position for up to eight hours

---

[3]Plaintiff began receiving disability benefits on December 3, 2001.

[4]Humphries was employed as a keypunch operator until May 30, 2001.

per day and required to perform tasks involving bending, stooping, squatting, crouching, and intermittent walking. Specifically, Humphries claims that she was required to move boxes of paper weighing between thirty-five and fifty pounds and climb stairs on a frequent basis.

On May 12, 2001, Dr. Wallace Purdy diagnosed Humphries with fibromyalgia and restless leg syndrome. Fibromyalgia is a chronic pain illness characterized by widespread musculoskeletal aches, pain, stiffness, soft tissue tenderness, general fatigue, and sleep disturbances.[5]

On August 8, 2001, Dr. Ira Holt, Humphries' primary care physician, totally restricted plaintiff from climbing, balancing, stooping, kneeling, and crawling; limited Humphries' ability to reach, walk, and stand for more than 2.5 hours; and limited her ability to sit for more than 5.5 hours.

On September 5, 2001, Dr. R.C. Cezayirli, upon Dr. Holt's referral, indicated that an MRI of the plaintiff's spine "does show some degenerative disc disease at multiple levels, but it is not that impressive." Dr. Cezayirli further states "this patient is feeling tired all the time," and had "difficulty walking after a period of time."

Dr. Holt again examined the plaintiff on September 17, 2001. Holt totally restricted the plaintiff's ability to climb, balance, stoop, kneel, crouch, and reach and limited the plaintiff's ability to sit, walk, and stand to periods no more than 2.5 hours in duration. Four days later on

_____

[5] *See* http://fmaware.org/fminfo/brochure.htm. The court takes judicial notice of the general information about fibromyalgia contained on this web site, given the defendant's concession, contained in its reply brief that they do not dispute plaintiff's fibromyalgia diagnosis. The court also takes judicial notice of the information about fibromyalgia submitted by the plaintiff as an exhibit to its motion to supplement its memorandum in opposition to the defendant's motion for summary judgment. *See Garmon v. Liberty Life Assurance Co.*, 385 F. Supp. 2d 1184 (N.D. Ala. 2004) (taking judicial notice of article about fibromyalgia).

September 21, 2001, Rheumatologist Dr. Cornelius Thomas indicated that Humphries had "generalized soft tissue tenderness that would meet the criteria for fibromyalgia."

Humphries continued receiving medical treatment in 2002. In June, Dr. John Morgan, confirmed Dr. Purdy and Dr. Thomas' earlier diagnoses of fibromyalgia. Morgan also diagnosed the plaintiff with chronic pain syndrome and advised Humphries to consult a pain specialist. Approximately four months later on October 8, 2002, Morgan referred Humphries to Andrew J. Rozsa, Ph.D, a medical psychologist. Although finding that the plaintiff's verbal complaints were consistent with her body language, Dr. Rozsa nevertheless found that her "overall presentation is inconsistent with medically explainable organic pathophysiology."

On December 19, 2002, Dr. Morgan gave plaintiff a Class 4 physical impairment, which included a marked limitation of functional capacity/capable of sedentary work, and further assessed Plaintiff's mental and nervous impairment as a Class 3 impairment, which provided that Humphries was capable of engaging in only limited stress and limited interpersonal relationships.

Humphries also continued to seek treatment from Dr. Holt in 2002. On December 18, 2002, Holt gave plaintiff a Class 5 physical impairment, which included a severe limitation of functional capacity and indicated that she was totally incapable of sedentary work.

On May 10, 2003, Humphries received a fully favorable Social Security Administration (SSA) decision since May 20, 2001. The SSA reasoned that Humphries' description of her limitations was "consistent with the record when considered in its entirety," and that Plaintiff "cannot perform her past relevant work and does not have transferable skills to perform other work within her residual functional capacity." The ALJ also opined that "given the claimant's residual functional capacity, and the vocational factors of her age, education and past work

experience, there are no jobs existing in significant number that the claimant is capable of performing."

On June 30, 2003, Humphries appealed Kemper's decision to terminate her long-term disability benefits to the UPS Claims Review Committee.  On August 15, 2003, the Committee upheld the initial decision to terminate Plaintiff's LTD benefits.

The Committee's decision was based on the opinions of five doctors who, on UPS' behalf, conducted independent reviews of Humphries' medical file.  However, none of the above-referenced doctors personally examined the plaintiff or performed any physical capacity or other vocational assessments.

Dr. Tamara Bowman, whose speciality is internal medicine, noted Humphries' fibromyalgia diagnosis, but nevertheless determined that the plaintiff's medical records contained "no documentation of objective clinical findings to support a functional deficit in the claimant that would preclude performance of her essential job duties."[6]  According to Bowman, plaintiff had a normal MRI of the brain, no evidence of connective tissue disease, rheumatoid arthritis, or any other objective test data that would indicate an inability to perform the essential functions of her job.  Consequently, Bowman discounted Dr. Holt's December 19, 2002 finding that Humphries had a Class 5 level of physical impairment that totally prevented her from performing sedentary work and Dr. Morgan's December 19, 2002 finding that the plaintiff had a Class 4 level of physical impairment.

Rheumatologists Dr. Sheldon Zane and Dr. Yvonne Sherrer both noted that the plaintiff's medical file contained objective findings indicating tenderness in the upper back and neck and

_____

[6]*See* doc. # 14, *Ex.* 1.

para lumbar regions as well as some degenerative changes in cervical and lumbar spine. However, despite these objective findings of fibromyalgia, they opined that Humphries' complaints were largely subjective without corresponding objective findings to support her contention that she was unable to perform sedentary work.

Dr. Glassman, a psychiatrist, reviewed the plaintiff's medical file, with an emphasis on medical information related to Humphries' alleged depression. Although acknowledging that neurologist Dr. Charles Fagan diagnosed plaintiff with clinical depression with somatization, Glassman opined that Fagan's findings did not contain any evidence of an incapacitating depressive reaction. Similarly, Glassman noted that Dr. Andrew Rozsa "fails to provide any objective mental status data to support his impressions . . . [Dr. Rozsa's] report fails to describe depression of such an intensity and severity as to preclude this claimant from performing the core elements of her regular occupation."

Lastly, Elana Mendelssohn, a clinical neuropsychologist, opined that Humphries' medical file did not contain examination findings to substantiate the presence of significant impairments in psychological functioning that would preclude the claimant from performing her occupation. According to Mendelssohn, the plaintiff's complaints consist almost exclusively of self-reported, subjective complaints of pain.

Plaintiff filed suit in this court on October 22, 2004

### III. STANDARD OF REVIEW

Summary judgment is an integral part of the Federal Rules of Civil Procedure and allows a trial court to decide cases where no genuine issues of material facts are present. Fed. R. Civ. P. 56. Disagreement between the parties is not significant unless the disagreement presents a

"genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). *See also, Celotex v. Catrett*, 477 U.S. 317, 327 (1986). A factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 251-52. In opposing a motion for summary judgment, "a party may not rely on his pleadings to avoid judgment against him." *Ryan v. Int'l Union of Operating Eng'rs, Local* 675, 794 F.2d 641, 643 (11th Cir.1986). Furthermore, mere verification of a party's own conclusory allegations is not sufficient to oppose a motion for summary judgment. *Fullman v. Graddick*, 739 F.2d 553 (11th Cir. 1984).

## IV. ANALYTICAL PARADIGM

ERISA provides no standards for evaluating plan administrator's determinations. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989). But the Supreme Court in *Firestone* established three standards for reviewing such decisions: "(1) *de novo* where the plan does not grant the administrator discretion[;] (2) arbitrary and capricious [where] the plan grants the administrator discretion; and (3) heightened arbitrary and capricious where there is a conflict of interest." *HCA Health Svcs. Of Ga., Inc., v. Employers Health Ins. Co.*, 240 F.3d 982, 993 (11th Cir. 2001) (quoting *Buckley v. Metropolitan Life*, 115 F.3d 936, 939 (11th Cir. 1997)).

In *Williams v. BellSouth Telecommunications, Inc.*, the Eleventh Circuit elaborated on the *Firestone* standards and articulated a multi-step approach for reviewing "virtually *all* ERISA-plan benefit denials . . . ." 373 F.3d 1132, 1137 (11th Cir. 2004) (citing *HCA Health Svcs*., 240 F.3d at 993-95.**)** This approach applies to denials based on plan interpretation as well as on factual determinations. *Williams*, 373 F.3d at 1137, n. 6. The steps are as follows:

1. "Apply the *de novo* standard to determine whether the claim administrator's benefits

8

denial [or plan interpretation] is 'wrong' (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision." *Williams*, 373 F.3d at 1138; *see HCA Health Svcs.*, 240 F.3d at 993 (applying this step when analyzing a claims manager's plan interpretation).

2. "If the administrator's decision in fact is '*de novo* wrong' then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision." *Williams*, 373 F.3d at 1138.

3. "If the administrator's decision is '*de novo* wrong' and he *was* vested with discretion in reviewing claims, then determine whether 'reasonable' grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard)." *Id.*; *see also Shannon v. Jack Eckerd Corp.*, 113 F.3d 208, 210 (11th Cir. 1997) (stating that "[a] decision to deny benefits is arbitrary and capricious if no reasonable basis exists for the decision"); *Paramore v. Delta Air Lines, Inc.*, 129 F.3d 1446, 1451 (11th Cir. 1997) (noting that "where the plan affords the administrator, discretion, the administrator's fact-based determinations will not be disturbed if reasonably based on the information known at the time the decision was made.")

4. "If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest." *Williams*, 373 F.3d at 1138.

5. "If there is no conflict, then end the inquiry and affirm the decision." *Id.*

6. "If there is a conflict of interest, then apply heightened arbitrary and capricious review to the decision to affirm or deny it." *Id.* With respect to the heightened arbitrary and capricious review in step 6 of this analysis, the Eleventh Circuit has described this standard "as somewhere

9

between the de novo and 'mere' arbitrary and capricious standards." *Id.* (noting that the Supreme Court has not explained this standard).

## V. LEGAL FINDINGS

The court has carefully reviewed the motion for summary judgment, the briefs filed in support if and in opposition to the motion, and the supporting and opposing evidentiary materials.  Based on its review of the above-referenced materials, the court concludes as follows:

(1) The motion for summary judgment filed by defendant Broadspire Services, Inc. (f/k/a Kemper National Service, Inc) is due to be GRANTED.  In its motion for summary judgment, Kemper argues that it is merely a third-party claims administrator with no authority to review benefits denials or to make the ultimate decision regarding eligibility.  Consequently, Kemper argues that it is not liable for UPS' decision to discontinue the plaintiff's long-term disability benefits.  *See Baker v. Big Star Div.*, 893 F.2d 288, 289 (11th Cir. 1990) (holding that an insurance company does not become an ERISA fiduciary simply by performing administrative functions and claims processing within a framework of rules established by an employer).

Humphries' brief in opposition to the motion for summary judgment does not address Kemper's argument.  In opposing a motion for summary judgment, "a party may not rely on his pleadings to avoid judgment against him." *Ryan v. Int'l Union of Operating Eng'rs, Local* 675, 794 F.2d 641, 643 (11th Cir.1986).  No burden rests upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. *Blue Cross & Blue Shield v. Weitz*, 913 F.2d 1544, 1550 (11th Cir.1990).  Rather, the onus is upon the parties to formulate arguments, and grounds alleged in the complaint but not addressed in opposing a motion for summary judgment are deemed abandoned.  *See Road Sprinkler Fitters*

10

*Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994).

(2) The motion for summary judgment filed by defendant United Parcel Service Retirement Plan is due to be GRANTED.  Count two of the plaintiff's complaint seeks a declaratory judgment that the plaintiff is entitled to additional benefits.  In its motion for summary judgment, the UPS Retirement Plan argues that the plaintiff has not exhausted the appeals process for any "additional benefits," and is therefore, barred from seeking any benefits other than long-term disability benefits.[7]  *See Watts v. BellSouth Telecomms., Inc.*, 316 F.3d 1203, 1206 (11th Cir. 2003) (holding that failure to pursue administrative appeals precludes suit in federal court).

Humphries' brief in opposition to the motion for summary judgment does not address the above-referenced  argument.  Consequently, for the reasons outlined in paragraph one of this Memorandum Opinion, count two of the plaintiff's complaint is deemed abandoned and the motion for summary judgment filed by defendant UPS Retirement Plan due to be GRANTED.

(3) However, the motion for summary judgment filed by defendant UPS is due to be DENIED.  Applying the first step of the analytical paradigm endorsed by the Eleventh Circuit in *Williams v. BellSouth Telecommunications, Inc.*, the court finds that the plaintiff has demonstrated a genuine issue of material fact regarding whether the claim administrator's denial of long-term disability benefits was *de novo* wrong.  Pursuant to the Plan, an employee is disabled if he or she is unable to perform the material and substantial duties of her regular occupation due to an illness.  According to UPS' description of the keypunch operator position, the plaintiff is required to "work in a seated position for the duration of the [eight hour work

---

[7]*See* doc. # 12, p. 20.

11

day]." Accepting the truth of the plaintiff's allegations as the court must at this stage of the litigation, Humphries' job also requires her to move boxes of paper weighing between 35 and 55 pounds and to occasionally climb stairs.

Given the Plan's definition of disability, one that hinges on the employee's vocational capacity, a reasonable juror could conclude that UPS' five independent physicians, none of whom performed any functional capacity evaluations, erroneously discredited the two physical capacity evaluations performed by Humphries' treating physicians, Dr. Ira Holt on December 18, 2002 and Dr. John Morgan on December 19, 2002. Dr. Holt gave Humphries a Class 5 physical impairment, totally precluding her from sedentary work because she could only sit for a maximum of 2.5 hours per day with a rest break every hour.

Similarly, Dr. Morgan gave plaintiff a Class 4 physical impairment, indicating a marked limitation in her ability to do sedentary work and restricted her from lifting, bending, and squatting. Dr. Morgan also gave plaintiff a Class 3 mental impairment, indicating that the plaintiff was limited in her ability to function in stressful environments and limited in her capacity to engage in interpersonal relationships. Given the above-referenced functional evaluations of the two physicians who actually treated Humphries, the court finds that the plaintiff has created a genuine issue of material fact as to whether the UPS claims committee was *de novo* wrong in its decision to terminate Humphries' long-term disability benefits.

(4) Applying the second step of the *Williams*' analytical paradigm, the court also finds a genuine issue of material fact about whether reasonable grounds support the termination of

Humphries' disability benefits.[8]  Specifically, a reasonable juror could determine that the Claims

Committee's emphasis on the lack of objective medical findings was unreasonable for three

primary reasons.  First, the plaintiff has three separate diagnoses of fibromyalgia from three

different treating physicians.[9]  This apparent unanimity regarding the plaintiff's fibromyalgia is

important because diagnosing fibromyalgia is often extremely difficult.[10]  The American College

of Rheumatology has established general classification guidelines for fibromyalgia, to help in the

assessment and study of the condition.  These guidelines state that the criteria for a diagnosis of

fibromyalgia is a widespread aching for at least three months and have a minimum of eleven

locations on the body that are abnormally tender under relatively mild, firm pressure.  However,

not all doctors agree with the above-referenced guidelines and question how reliable and valid

tender points are as a diagnostic tool.[11]

　　　　Second, a jury could find that Rheumatologists Dr. Zane and Dr. Sherrers' reliance on the

lack of objective tests unreasonable given (1) the fibromyalgia diagnosis of three of the plaintiff's

---

[8]The parties agree that the UPS Claims Review Committee was vested with discretion in reviewing claims.  *See* doc. # 18, p. 13.  Furthermore, the plaintiff's submissions in opposition to the motion for summary judgment do not challenge UPS' assertion that the presence of a non-reversionary trust eliminates any conflict of interest that would otherwise exist when employees of the Plan sponsor are on the committee making decisions about eligibility for disability benefits.  *See Turner v. Delta Family-Care Disability and Survivorship Plan*, 291 F.3d 1270, 1273 (11th Cir. 2002).

However, at the October 26, 2005 pretrial conference, plaintiff's counsel suggested that they might be challenging UPS' assertion that the presence of a non-reversionary trust eliminates any potential conflict of interest.  The court asked plaintiff's counsel to definitively advise the court on or before October 28, 2005 if they were going to seek permission to supplement their previously filed brief.  Having heard nothing from plaintiff's counsel, the court accepts UPS' assertion about the nature of the non-reversionary trust for purposes of ruling on the motion for summary judgment.

[9]In 2001 from Drs. Wallace Purdy and Cornelious Thomas and in 2002 from Dr. John Morgan.

[10]*See* http://www.mayoclinic.com/

[11]*Id.*

treating physicians; (2) the inherent difficulty in diagnosing fibromyalgia; (3) and Drs. Zane and Sherrers' apparent disregard for the often chronic and debilitating pain that often accompanies fibromyalgia and the potential impact of chronic and debilitating pain on the plaintiff's ability to perform even sedentary work.

Third, a fact-finder could question the reasonableness of UPS' decision to disregard the Social Security Administration's determination that Humphries was unable to perform any work existing in the national economy.[12] *See e.g., Kirwan v. Marriott Corp.*, 10 F.3d 784, 790 n. 32 (11th Cir. 1994) (holding that "[a] district court many consider the Social Security Administration's determination of a disability in reviewing a plan administrator's determination of benefits.").

In consideration of the foregoing reasons, the court concludes that UPS' motion for summary judgment is due to be DENIED based on the existence of genuine issues of material fact regarding the reasonableness of the decision to discontinue the plaintiff's disability benefits.

## VI. CONCLUSION

Based on the foregoing analysis, the court concludes that the motion for summary judgment is due to be GRANTED in part and DENIED in part.  A separate, final order will be entered in accordance with this Memorandum Opinion.

DONE and ORDERED this 18th day of November, 2005.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE

---

[12]*See* doc. # 19, *Ex.* D.

14